**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**CAHALL BROTHERS,**
**Defendant-Appellee.**

No. 80–3550.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1981.

Decided April 6, 1982.

Ann Marie Tracey, Asst. U. S. Atty., Cincinnati, Ohio, Marc Richman, Robert S. Greenspan, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Stanley K. Purdy, Georgetown, Ohio, for defendant-appellee.

Before ENGEL and KENNEDY, Circuit Judges, and PECK, Senior Circuit Judge.

CORNELIA G. KENNEDY, Circuit Judge.

This appeal requires that we resolve a priority conflict over proceeds from the repossession sale of five pieces of farm equipment applying Ohio's version of the Uniform Commercial Code, Ohio Rev.Code Ann. §§ 1309.01–.50. The conflict is between the seller of the equipment, Cahall Brothers, who clearly had a perfected purchase money security interest in the equipment, and the government who, through the Farmers Home Administration (FHA), advanced part of the money for the equipment purchase. The primary issue on appeal is whether the FHA, which filed first, also has a purchase money security interest. Whether the FHA has such an interest depends upon whether it gave value when the promissory note was executed by the purchasers of the equipment, Lacys, or whether it gave value at a later date when funds were released from the Lacys' special supervised checking account over which the FHA retained control.

A second issue is whether the District Court judge correctly allowed Cahall to re-

tain the entire proceeds received from its repossession sale of the equipment in satisfaction of the outstanding unpaid balance owed to it by the Lacys and the costs of repossession.

The FHA approved a $22,800 loan to the Lacys in September 1971. In the promissory note executed by the Lacys on September 23, 1971, they agreed to use the loan for purposes authorized by the FHA. The loan was for farm operating expenses, which include the purchase of farm equipment. 7 U.S.C.A. § 1942(a). On December 13, 1971, FHA filed its financing statement which covered *inter alia* "farm equipment," with no reference to after-acquired property. On January 4, 1972, $13,600 of the loan money was first disbursed. On January 10, 1972, a security agreement was entered into between FHA and the Lacys which listed "all farm and other equipment ... now owned or hereafter acquired by the Debtor" as collateral. The security agreement purported to cover this loan and any other loans which the FHA made to Lacys. Pursuant to the terms of the September 23 promissory note, Lacys' first installment payment was due on February 1, 1972. On March 2, 1972, the FHA issued a check to Lacys for deposit into a supervised checking account over which the FHA had control. This second disbursement was for $9,280, the remainder of the loan. The money was deposited into the checking account on March 5. On April 11, a $6,780 check was written on the supervised account and co-signed by FHA and Lacys. The front of the check indicated that it was for the purchase of four pieces of farm equipment. The same day the check was co-signed a second security agreement was entered into between Lacys and the FHA covering the four pieces of equipment. The next day, April 12, Lacys used the checks as a down payment on the purchase of four pieces of farm equipment plus a tractor from Cahall. Cahall entered into a security agreement with Lacys using all five pieces of farm equipment as collateral. It is uncontested that this security agreement created a perfected purchase money security interest in Cahall after Cahall perfected by filing a

financing statement with the appropriate county records office on April 19.

Subsequently, Lacys defaulted on their payments to Cahall and in April 1973, Cahall repossessed the four items of equipment and the tractor, retaining all of the proceeds from the repossession sale in satisfaction of their indebtedness and the cost of repossession. A priority dispute ensued between FHA and Cahall as to $5,700, representing the value of the four pieces of equipment only at the time of repossession. In addition, FHA challenged the reasonableness of Cahall's repossession fees for all five items.

The District Court found on summary judgment that the FHA's loan was a general purpose loan and that the financing statement was non-descriptive and after-acquired, while Cahall's was a purchase money security interest. By implication, the District Court found that FHA's security interest in the farm equipment was not a purchase money security interest.

FHA appeals alleging that the District Court erred as a matter of law in impliedly finding that it did not have a purchase money security interest in the equipment. It also argues that the District Court's conclusion that there is no material issue of fact that Cahall's repossession expenses were reasonable is erroneous.

It is undisputed that Cahall had a perfected purchase money security interest in the four pieces of farm equipment and the tractor. Ohio Rev.Code Ann. § 1309.05(A). On the present record it is not possible to determine whether FHA also had a "purchase money security interest" based on Ohio Rev.Code Ann. § 1309.05(B). Under this provision: A security interest is a purchase money security interest to the extent that it is: "taken by a person who by making advances or incurring an obligation gives *value* to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." (emphasis added). *Id.*

If FHA does not have a purchase money security interest, Cahall would prevail un-

der Ohio Rev.Code Ann. § 1309.31(D). This provision states that "[a] purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral or its proceeds if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter." If the FHA does have a purchase money security interest it would prevail over Cahall's purchase money security interest under Ohio Rev.Code Ann. § 1309.31(E), since it was the first to file, December 13, 1971, or have its security interest attach, April 12, 1972.

■ The fact that the after-acquired property was not mentioned in FHA's financing statement of December 13, 1971 is of no consequence since there is no need to refer to after-acquired property or future advances in the financing statement. Ohio Rev.Code Ann. §§ 1309.39 Official Comment 2, 1309.15 Official Comment 5.

At issue is whether FHA gave value, within the meaning of section 1309.05(B), when (1) it approved the Lacys' loan in September 1971, (2) imposed the requirement of the supervised checking account, or (3) made the second disbursement of the loan proceeds. Value is defined generally by Ohio Rev.Code Ann. § 1301.01(RR), but the definition is narrowed by section 1309.-05(B). Section 1309.05(B) provides that a purchase money party must be one who gives value by making an advance[1] or incurring an obligation. Present consideration is required under section 1309.05(B) for a purchase money security interest, and a security interest taken as security for or in satisfaction of a pre-existing claim or antecedent debt is excluded from the purchase money security category, despite its inclusion in the definition of value. Ohio Rev.

Code Ann. § 1309.05 Official Comment 2 (exclusion); Ohio Rev.Code Ann. § 1301.-01(RR)(2)(inclusion).

■ If FHA incurred an obligation to loan money in September 1971, value would have been given at that time. Value is given when a secured party acquires rights "(1) in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon." Ohio Rev.Code Ann. §§ 1301.01(RR)(1), 1309.05(B). The actual disbursement of the loan proceeds at a later date would not constitute value, within the meaning of section 1309.05(B), since FHA would merely be tendering money to Lacys pursuant to a pre-existing legal duty. If no binding promise to loan money arose in September 1971, value may have been given at the time FHA actually transferred the money. See *Friedlander v. Adelphi Mfg. Co.*, 5 U.C.C.R.S. 7 (S.Ct. N.Y.1968). Even if FHA committed itself to loan money to Lacys in September 1971, facts may exist which indicate that additional value, in the form of present consideration, was given by the FHA with respect to the supervised checking account. A secured party gives value if it acquires rights, generally, in return for any consideration sufficient to support a simple contract. Ohio Rev.Code Ann. §§ 1301.01(RR)(4), 1309.05(B).

■ Since the full terms and nature of the loan agreement were never before the District Court on this motion for summary judgment[2] nor the circumstances under which the supervised checking account was required explained, we find it necessary to remand this case to the District Court to determine when value, within the meaning of section 1309.05(B), was given and to apply the appropriate priority rules.

1. An advance is made "pursuant to commitment" if the secured party has bound himself to make it, whether or not a subsequent event of default or other event not within his control has relieved or may relieve him from his obligation. Ohio Rev.Code Ann. § 1309.01(11).

2. Although we may not engage in fact-finding or speculation on appeal, the terms of the promissory note, which made Lacys' first in-

stallment payment due on February 1, 1972, suggest that the FHA gave value in September 1971 when it incurred an obligation to loan money and not at a later date. However, the long delay in transferring the funds and the supervised checking account suggest that all of the terms of the agreement do not appear in the note.

■ This Court is also of the opinion that an insufficient factual basis existed to support the award to Cahall of $3,155 in repossession expenses. The only evidence considered by the District Court was an answer to an interrogatory in which Cahall made the naked allegation that those were its expenses. No apportionment of repossession expenses on an item-by-item basis was tendered. On remand, evidence should be taken and fact-findings made sufficient to enable this Court to undertake effective review.

Accordingly, the judgment of the District Court is vacated and the case is remanded to the District Court for further proceedings consistent with this opinion.