**In re Kenneth Neil PITMAN and Patricia Roberts Pitman, Debtors.**

**Robert H. WALDSCHMIDT, Trustee, Plaintiff-Appellee,**

v.

**MID–STATE HOMES, INC., and Jim Walter Homes, Inc., Defendants-Appellants.**

**No. 87–5306.**

United States Court of Appeals, Sixth Circuit.

Argued Jan. 7, 1988.

Decided March 30, 1988.

Craig R. Allen, Hall, Haynes, Lusk and Foster, Chattanooga, Tenn., for defendants-appellants.

Robert H. Waldschmidt, Nashville, Tenn., for plaintiff-appellee.

Before MERRITT, KENNEDY and KRUPANSKY, Circuit Judges.

MERRITT, Circuit Judge.

This case raises a significant question in bankruptcy concerning the relationship between the concept of a conditional "antecedent debt" and the concept of "contemporaneous exchange for new value" under the preference section of the Revised Bankruptcy Code of 1978, as amended in 1984, 11 U.S.C. § 547 (Supp. 1986).[1] The essen-

---

1. § 547. Preferences.

(a) In this section—

. . . .

(2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation;

. . . .

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

. . . .

(e)(1) For the purposes of this section—

(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee; and

. . . .

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time;

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(i) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

(f) For the purposes of this section, the debtor is presumed to have been insolvent on and

tial question before us is whether the trustee in bankruptcy can avoid as a preference a bankrupt home buyer's mortgage deed given a month before bankruptcy as security for payment of the purchase price of a home. The transfer was made and recorded on the same day that the warranty deed conveying the property to the buyer was transferred and recorded. Both transfers were made in order to perform the mutual conditional promises given in an executory contract of sale made a month before the transfers. The bankruptcy and district courts below held that the mortgage was conveyed solely for an "antecedent debt" created by the executory promises of the land contract, rather than for new value consisting of the warranty deed given contemporaneously in exchange for the mortgage. We hold that such a mutual contemporaneous exchange of "legal" interests in the property in place of the previously existing inchoate "equitable" interests constitutes a valid contemporaneous exchange for "new value" under § 547(c)(1). The mortgage here was exchanged for fair value and does not diminish or impair the bankrupt estate, or create a race to the courthouse by creditors to dismember the estate, or undermine the policy of equality of distribution among creditors—the primary problems concerning pre-petition transfers that the preference section was designed to solve. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 177–79 (1977), U.S Code Cong. & Admin.News 1978, p. 5787.

## I.

### A. Facts

Pitman, the debtor, filed a Chapter 7 petition in bankruptcy on November 21, 1984. The events that gave rise to the instant case began four months earlier, when Pitman sought to purchase a small home in Kentucky for $20,000 from the seller, Jim Walter Homes, Inc. On July 12th, Pitman executed three documents: a contract of sale containing a so-called "home office acceptance clause," a promissory note, and a mortgage deed covering the property. He mailed these documents to the seller's home office in Tampa. The note and mortgage were documents that would be needed for the closing of the transaction if the offer were accepted. The promissory note was for the purchase price, and the mortgage secured the promissory note. These three instruments together constituted an offer to purchase subject to acceptance by the seller. Upon acceptance they constituted the terms of the contract of sale, to be closed later by delivery and recording of a warranty deed from seller to buyer and by the mortgage deed conveying the security interest to the seller.

The promissory note referred directly to the underlying land transaction for which it was consideration. It stated that the mortgage deed was to be given as security for the installment note. The note provided for even monthly payments of $194.90 for 20 years, covering principle and ten percent interest for a total payment of $42,098.40, with the first payment due on September 5, 1984. The mortgage recited that it was to be security for the promissory note, and contained a long and detailed provision warranting title which began, "Mortgagor hereby covenants with the Mortgagee that the Mortgagor is lawfully seized of the fee simple title to the above property," and continued by warranting that the property was free of every kind of lien or claim on the property or any defect in title. The promissory note referred specifically to this instrument. It therefore seems that the parties understood that the buyer would receive clear title to the property by warranty deed at or before the time the mortgage was conveyed back to the seller as security for the purchase price. The contract of sale confirmed the conditional nature of obligations and contained provisions allowing either the buyer or the seller

during the 90 days immediately preceding the date of the filing of the petition.

(g) For the purposes of this section, the trustee has the burden of proving the avoidability of a transfer under subsection (b) of this section,

and the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.

to "cancel" upon the occurrence of a number of events which gave both parties an easy way of withdrawing from the transaction at any time up until the time the property was actually conveyed.

In late July the seller accepted the offer verbally but not in writing and delivered possession of the house to Pitman by giving him the keys. On September 14 the seller formally accepted the offer in writing by mail. The seller did not immediately convey, deliver or record the warranty deed or record the mortgage which it had received from Pitman in July. Rather—and here is the event on which the courts below made the preference question turn—the seller waited until October 16, a month later, to have both the deed and the mortgage recorded in the local Kentucky courthouse. The seller mailed the two instruments on October 22 to Pitman. Although the first payment on the note originally was due September 5, Pitman did not make his first payment until after he had the deed.

## B. The Preference Section

Section 547 on preferences is complex both in language and in theory. *See* Countryman, *The Concept of a Voidable Preference in Bankruptcy*, 38 Vand.L.Rev. 713 (1985) (116 page article devoted to interpretation of § 547). Section 547 first states a set of definitions [§ 547(a)], then creates a rule of avoidance [§ 547(b)], then establishes a set of exceptions to the rule [§ 547(c)], and finally specifies a series of timing principles that govern the effective dates of critical statutory events such as "transfer" and "perfection" [§ 547(e)]. The rule [§ 547(b)] declares that the bankruptcy trustee "may avoid any transfer" of the debtor's property to a creditor "for or on account of an antecedent debt owed by the debtor before such transfer was made" that diminishes the estate or creates an inequality among classes of creditors, if the debtor was insolvent, and the transfer was made within 90 days of the filing of the petition. Excepted from this rule are five types of transfers [§ 547(c)]. We are concerned here with the exception for transfers that constitute "a contemporaneous

exchange for new value given to the debtor," [§ 547(c)(1)].

The timing principles [§ 547(e)] emphasize the importance of when a transfer is "perfected" because a transfer normally must be perfected in the hands of the transferee if it is not to be treated as a preference. They first provide that a "transfer ... is perfected when" the transferee has acquired an interest superior to a bona fide purchaser. The provisions then become somewhat confusing. They use the word "transfer" in three separate senses; "transfers made," "transfers perfected," and "transfers which take effect," without indicating precisely in what sense the word "transfer" is used in the *other* parts of § 547. Thus: "For purposes of this section ... *a transfer is made* ... (A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected [*e.g.,* recorded]" within 10 days, or (B) when perfected, if perfected outside the 10 day period, or (C) at the time of filing of the petition if the transfer has not been perfected by that time. The last provision [§ 547(e)(3)] says that "a transfer" should not be interpreted as "made until the debtor has acquired rights in the property transferred," meaning apparently that the transferor must acquire the property interest in question before he can be considered to have transferred it.

## C. Proceedings Below

Confronted with these facts and this admittedly difficult statutory scheme, the essential conclusions of the bankruptcy judge were:

[From the time the contract was accepted,] the debtor had an obligation under the sales contract to make periodic payments to Jim Walter. The sales contract was accepted by Jim Walter no later than mid-September.... Since the debtor's obligation was created at least one month prior to the October 16 transfer, the court finds that there was an antecedent debt in this case....

Second, the court looks to the section 547(c)(1) contemporaneous exchange de-

fense asserted by defendant.... The court holds that the equitable title to the realty was transferred [in mid-September] to the Pitmans prior to the October 16 transfer that occurred upon recordation of the mortgage.

App. 48–51.

Thus, the court held that because the transfer of equitable title "took effect" 32 days before rather than "within 10 days" before the mortgage was "perfected" by recording, the transfer of equitable title and the transfer of the mortgage were not contemporaneous because not within 10 days of each other.

The district judge wrote a brief opinion on appeal accepting the bankruptcy court's reasoning, 78 B.R. 882. He stated that "when acceptance was made" a contract of sale was formed, and "immediate recordation of the [mortgage] deed was essential to preclude the creation of a preferential transfer" even though there was no warranty deed conveying a mortgageable title to Pitman at that time. "The appellants [the seller] will not be heard to say," the District Court observed, "that a 32-day-old debt is not antecedent." Thus both courts below held that once a contract of sale of real estate is formed which promises installment payments and a transfer of a mortgage deed as security, the parties must "perfect" the mortgage by recordation within 10 days of the contract of sale even though the seller has not yet deeded the property to the buyer.

The statutory theory applied by the lower courts apparently was that the "transfer" of title and the "transfer" of the mortgage had "take[n] effect" between the parties under § 547(e) at the time of the contract of sale, and thus, to qualify as a contemporaneous exchange, the mortgage must be perfected by recording within 10 days. Under this reasoning, the contract of sale creates the effective "transfer" and the "antecedent debt" for which the later recorded transfer of the mortgage is made. Both courts also were apparently of the view that conveyance of legal title to the property by warranty deed did not constitute the giving of "new value" in exchange

for the mortgage under the contemporaneous exchange exception. Therefore, they held, without discussing the "new value" question explicitly, that the contemporaneous exchange exception was inapplicable.

## II.

In their rush to apply the statutory provisions in a mechanical way that increases the size of the bankruptcy estate, the courts below failed to consider the unfair and inefficient implications of the result they reached. It is true that § 547 generally represented a "substantial modification" of previous preference law to bring it into conformity with modern commercial practices. *See* H.R.Rep. No. 595, *supra*, at 372, U.S.Code Cong. & Admin.News 1978, p. 5787. However, the Bankruptcy Code of 1978 did not arise *ex nihilo*, but rather represents a refinement of both the earlier bankruptcy statutes and their underlying principles of common law and equity. When these principles and, perhaps most important, the purposes of avoidable preferences are taken into account, the error of the bankruptcy and district courts becomes clear.

The courts below erred in holding that the mortgage transfer at issue was made *solely* for an "antecedent debt" rather than for "new value." They also erred in holding that the mortgage transfer "takes effect" for the purposes of § 547(e)(2) at the time of the contract of sale. In the instant case, the mortgage and the warranty deed were exchanged, "transferred" and recorded on the same day, October 16. The transfer therefore falls under the § 547(c)(1) "contemporaneous exchange" exception.

### A. Underlying Legal and Equitable Principles

Under Kentucky law, which is applicable in this case, the purchaser has no liability to pay or convey a mortgage to a seller of land under the land contract at issue until the seller conveys title. *See Thomas v. Todd,* 13 Ky. 337 (1823); *Gayle v. Troutman,* 31 Ky.L.Rptr. 718, 103 S.W. 342 (Ky. 1907). The same is true under general

common law principles of mortgages. *See* Osborne, *Mortgages* (1951):

> In an executory contract by E to lend or perform in some other way and to receive security in return for M's promise to borrow and repay or pay, the property is intended to be security for the obligation to repay or pay and only to the extent of such duty. Until the loan is made or the other stipulated performance is given, no duty to repay or pay arises. Since it was this duty which was intended to be secured, no equitable mortgage will arise until E makes the agreed upon performance. E's performance is a condition precedent either to specific performance of a promise to give a mortgage or to giving effect to an agreement that property be held, or operate presently, as security.

*Id.* at § 26. Moreover:

> It is impossible for any security interest to arise before the property is acquired by the mortgagor, and ... there can be no legal mortgage ... until a proper instrument of transfer has been executed.

*Id.* at § 114.

Likewise, under normal principles of contract law, the duty under the contract of sale to pay and to transfer the mortgage was *conditional*—the promise to pay and to mortgage was conditioned on receipt of clear title by warranty deed. *See* Restatement of Contracts § 395 (1932) (describing "when failure of a condition to occur discharges a duty"). The contract of sale created only a conditional duty of performance, which became an immediate duty only after the condition was fulfilled. The transfer of the mortgage interest was not complete, and it could not "take effect," until the condition—the passing of clear title—was performed by the seller. Thus the transfer did not take effect in mid–September. At that point, the transfer could not take effect. Debtor and creditor both had equitable rights, but it was impossible for the debtor to mortgage the property until he got clear title.

In addition, it is clear that in the instant case a court of equity under normal principles of contract law would not have refused specific performance of either the duty to convey or the duty to mortgage because of the buyer's insolvency. The transfers were a fair exchange, and contract law does not treat the transfers here as a preference and therefore would not refuse specific performance, *see id.* at § 362 ("effect of the defendant's insolvency on the remedy of specific performance"):

> A decree for the specific performance of a wholly executory [land] contract that provides for a fair exchange of equivalent performances will not operate as a preference over other creditors, because the estate of the insolvent will be enriched as much as it is depleted.

In the instant case, the estate was "enriched as much as it was depleted" by the transfers.

## B. The Contemporaneous Exchange Exception

The argument presented above that the mortgage transfer did not take effect in September and was not made *solely* "for or on account of an antecedent debt" necessarily includes a corollary argument: the mortgage transfer was a "contemporaneous exchange for new value given to the debtor," namely, the warranty deed which "released" the creditor's rights in the property. Thus the transfer falls within the terms of § 547(c)(1). This interpretation is supported by the definition of "new value" in § 547(a)(2), which includes a "release" of property as one type of "new value." We do not hold that no "antecedent debt" existed. We hold rather that the mortgage transfer was not made *solely* for such a debt but was made for new value.

There seems little doubt that the draftsmen of the "contemporaneous exchange" provision of the preference section of the revised bankruptcy code intended to incorporate the preference holding of Justice Brandeis, speaking for a unanimous Court, in *Dean v. Davis*, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419 (1917). *See* Countryman, 38 Vand.L.Rev. at 759–60 (discussing legislative history of § 547). In *Dean v. Davis* an insolvent debtor gave his brother-in-law a mortgage on his farm in exchange for paying some promissory notes to a bank. The mortgage was recorded eight days after the loan, and the court held that the

mortgage was not a voidable preference, because it "was given to secure ... a substantially contemporaneous advance," 242 U.S. at 443, 37 S.Ct. at 131. Likewise, in the instant case the exchange is contemporaneous because under § 547(e)(3) "a transfer is not made" until the debtor has acquired "the property transferred." Moreover, under § 547(e)(2), "a transfer is made" when "such transfer takes effect between the transferor and the transferee, if ... perfected ... within 10 days." Converting the contemporaneous exchange holding of *Dean v. Davis* concerning real estate mortgages into the semantics of subsections (e) and (c)(1) of § 547, the only logical holding is that the mortgage transfer here is a contemporaneous exchange for new value perfected within the requisite ten day period. The logical sequence is as follows: The mortgage transfer warranting good title could not be "made" until Pitman actually acquired good title, because the right to good title was part of the "property transferred." § 547(e)(3). Therefore, the mortgage transfer occurred no earlier than the day Pitman received good title—October 16. On that day, the seller discharged its equitable obligation to Pitman by transferring the legal rights to the property to him. In exchange for the satisfaction of his equitable rights, Pitman mortgaged the property to the sellers, thus discharging his equitable obligation to transfer the security interest to the seller. At that point, the mortgage transfer "took effect" between the parties, and the seller had ten days to perfect. § 547(e)(2). The mortgage transfer was perfected on the same day it "took effect" between the parties, thus it was "made" on that day. Therefore, the mortgage transfer was half of a "substantially contemporaneous exchange for new value." The transfer of

the deed and the transfer of the mortgage were effected "contemporaneously" by their simultaneous recording.[2]

## C. The Mortgage Transfer Had No Preferential Effect

Although the parties unfortunately have not presented argument concerning the preferential effect of the transfers in question, we believe our reasoning is reinforced by the fact that the mortgage transfer in question has no preferential effect because under § 547(b)(5)(B) the transfer does not "enable such creditor to receive more than such creditor would receive if ... (B) the transfer had not been made." This is true for the same basic reason as the reason given in § 362 of the Restatement of Contracts, quoted above, concerning specific performance of obligations of insolvent debtors at common law:

> A decree for the specific performance of a wholly executory [land] contract that provides for a fair exchange of equivalent performances will not operate as a preference over other creditors, because the estate of the insolvent will be enriched as much as it is depleted.

The concept here is the same as the idea developed in old Supreme Court opinions under old bankruptcy acts—that a voidable preference must "impair," *Stewart v. Platt*, 101 U.S. (11 Otto) 731, 743, 25 L.Ed. 816 (1879), or "diminish," *Clark v. Iselin*, 88 U.S. (21 Wall) 360, 378, 22 L.Ed. 568 (1874), the estate. It is also the same as the idea developed in more recent circuit court opinions holding that payments made to a fully secured creditor were not voidable transfers because the payments reduced the amount of the debt with a corresponding increase in the value of the debtor's equity in the collateral. *See, e.g.,*

---

**2.** Thus, like *In re Arnett*, 731 F.2d 358 (6th Cir.1984), this case involves a security interest which is not an "enabling" or "purchase money" security interest within the definition of § 547(c)(3), and therefore is analyzed under the rubric of the "contemporaneous exchange" exception, 547(c)(1). In *Arnett*, the security interest was perfected 33 days after it was given in exchange for the new value given to the debtor and therefore was held not to be contemporaneous. Here, the security interest was given and perfected simultaneously with the exchange of

new value represented by transfer of the warranty deed.

*Arnett* held that the legislative application of a 10–day limit for the perfection of purchase money security interests in subsection (c)(3) should be read to require a similar 10–day period for perfection of nonpurchase money security interests analyzed for contemporaneity under subsection (c)(1). 731 F.2d at 363. The result we reach is wholly consistent with this principle of *Arnett*.

*Shaw v. Walter E. Heller & Co.*, 385 F.2d 353 (5th Cir.1967), *cert. denied*, 390 U.S. 1003, 88 S.Ct. 1248, 20 L.Ed.2d 104 (1968); *Rheem v. Allnut*, 64 F.2d 548, 549 (D.C.Cir. 1933); *see also* Countryman, *supra*, at 739–40. In the instant case, the mortgage transfer which decreased the value of the estate could not have been made without the transfer of the warranty deed which correspondingly increased the value of the estate. So the estate was "enriched as much as it was depleted," and the transfer had no preferential effect.

### III.

This conclusion is reinforced by an analysis of the economic consequences of the decision of the courts below. The final judgment below states that "the trustee be, and is hereby authorized to sell the real property of the debtors" for the benefit of the general creditors "free and clear of all liens of the defendants." This uncouples the reciprocal rights to specific performance of the debtor and the creditor, leaving the rights of the debtor fully enforceable in the hands of the trustee, while converting the rights of the creditor into an unsecured claim of a general creditor.

The decision below would have broad significance for the home-buying public and the home and building finance industry. Every home mortgage given by a debtor at a closing within 90 days of bankruptcy would be avoidable, thereby entirely stripping the seller or mortgagee of its security, unless the seller or mortgage lender were able to close the contract of sale and record the mortgage within 10 days of the execution of the contract of sale. Closings seldom can take place within 10 days of the execution of the contract of sale because of the need to examine the title, obtain title insurance and obtain financing. The effect would be to bring the debtor's home into the bankruptcy estate free of the mortgage, thereby eliminating the home builder's or lender's security and making the value of the property available for payment of the debts of the unsecured creditors, to the fees and administrative expenses of the trustee, and for the fees payable to the bankruptcy court itself for expenses of the U.S. Trustee system.

Under this interpretation, not only are mortgagees at peril, but potential home buyers are worse off as well. The principle adopted by the court below would make it difficult for a careful builder or lender to justify making a home loan to anyone who could conceivably have financial problems in the near future. The result would be an increase in the cost of mortgages which would inevitably be borne by the home-buying public.

The bankrupt home buyer is also worse off because in many cases the trustee would "abandon" under § 554 this type of property to the debtor and the mortgagee if a sale of the property would not realize much more than the remaining mortgage indebtedness plus the homestead exemption and the closing costs of the sale. Under the ruling below, the debtor and the mortgagee would almost never be in a position to discuss the future of the home with the trustee because the mortgagee would now have no interest and the debtor would only have a homestead interest.

Accordingly, the judgment of the District Court, affirming the bankruptcy court, is reversed. All costs should be taxed against appellee.