In re Richard Lee COHEE and Christine Jennifer Cohee, Debtors.

Henry E. HILDEBRAND, III, Chapter 13 Trustee, Plaintiff,

v.

RESOURCE BANCSHARES MORTGAGE GROUP and Freedom Mortgage Corporation, Defendants.

Bankruptcy No. 394–03477.
Adv. No. 394–0289A.

United States Bankruptcy Court, M.D. Tennessee.

Feb. 24, 1995.

Joseph R. Prochaska, Nashville, TN, for defendants.

William T. Cheek III, Nashville, TN, for plaintiff.

### MEMORANDUM

ALETA ARTHUR TRAUGER, Bankruptcy Judge.

This matter is before the court upon the motion for summary judgment filed by defen-

dants Resource Bancshares Mortgage Group and Freedom Mortgage Corporation. For the reasons set forth below, the motion will be denied.

## FACTS

On March 8, 1994, the debtors executed a note and deed of trust in favor of defendant Freedom Mortgage Corporation, which was simultaneously assigned to defendant Resource Bancshares Mortgage Group. The deed of trust states that "Borrower *owes* Lender" $71,152, and that, except for encumbrances of record, "Borrower is lawfully seized of the estate *hereby conveyed* " (emphasis added). The note contains debtors' promise to pay $71,152 plus 8 percent interest "[i]n return for a loan received from Lender." Interest is to be charged "from the date of disbursement of the loan proceeds by Lender" (on the loan already "received," according to this document, by the debtors). Nothing in either document indicates that debtors' obligations were conditional upon receipt of the loan proceeds or anything else.[1]

Also, on March 8, the debtors and a "Settlement Agent," whom the parties orally stipulated was an agent of the defendants, signed a HUD Settlement Statement (including an Addendum) prepared for the defendants by Lehman Land Title. The Settlement Statement reflected that the loan proceeds were to be used to refinance debtors' existing mortgage with AmSouth and that actual disbursement of the funds to AmSouth would occur on March 31, 1994. The Settlement Statement also included debtors' representation that it was "a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction." The Settlement Agent represented that the document was "a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction."

The loan proceeds were disbursed to AmSouth on March 31, 1994. Resource Bancshares recorded the deed of trust on April 11, 1994. Debtors filed a Chapter 7 bankruptcy petition on May 24, 1994, and the Chapter 7 trustee commenced this adversary proceeding to recover a preferential transfer on July 18, 1994. The case was converted to Chapter 13 on September 1, 1994, and the Chapter 13 trustee was permitted to be substituted as plaintiff by Order entered on January 11, 1995.

## THE ISSUE

The trustee as plaintiff asserts that the recording of the deed of trust constitutes a preferential transfer under § 547(b) of the Bankruptcy Code. Under that section, the trustee has the burden of proving that there was a transfer of an interest of the debtor in property:

-to or for the benefit of a creditor;

-on account of an antecedent debt owed by the debtor before such transfer was made;

-made while the debtor was insolvent;

-made on or within 90 days before the filing of the petition;

-that enabled the creditor to receive more than it would receive in a hypothetical Chapter 7 liquidation if the transfer had not been made.

11 U.S.C. §§ 547(b) and (g). The parties filed written stipulations that the transfer at issue meets all of the above elements except the antecedent debt requirement.

The defendants contend that the transfer was not on account of an antecedent debt and that it was actually a contemporaneous exchange for new value protected under § 547(c)(1). Under that section, the defendants have the burden of proving that the transfer was intended by the debtor and the creditor to be a contemporaneous exchange for new value and, in fact, was a substantially contemporaneous exchange. 11 U.S.C. §§ 547(c)(1) and (g).

---

1. The deed of trust reflects on its face that it was prepared by one of the defendants; the note, in all likelihood, was as well. Tennessee law has long recognized that contracts should be construed against the drafter when there is a question about the proper construction. *Tate v. Trialco Scrap, Inc.*, 745 F.Supp. 458, 467 (M.D.Tenn. 1989), *aff'd* 908 F.2d 974 (6th Cir.1990); *Hanover Insurance Co. v. Haney*, 221 Tenn. 148, 425 S.W.2d 590, 592 (1968).

■ When the transfer is the perfection of a security interest, courts look to § 547(e)(2) to determine both of these issues. *See In re Arnett,* 731 F.2d 358, 363 (6th Cir.1984); *Norton Bankruptcy Law and Practice 2d,* § 57:13 at 57–64 and 65 (1994). That section provides in pertinent part that, for purposes of § 547, a transfer is **made—**

> (A) at the time such transfer **takes effect between the transferor and transferee,** if such transfer is perfected within 10 days; [or]
>
> (B) at the time such transfer is perfected, if such transfer was perfected after such 10 days.

If the transfer falls within this 10–day "safe harbor" it is not avoidable, both because is not on account of an antecedent debt, *see* § 547(b)(2), and because it is a substantially contemporaneous exchange under § 547(c)(1). *Arnett,* 731 F.2d at 364.

In this case, there is no question that the transfer of the deed of trust was perfected on April 11, when the deed of trust was recorded. The problem is determining when the transfer "took effect" between the parties, so as to trigger the running of the 10–day period. The defendants assert that it took effect on March 31, when the loan was funded. If this is true, perfection occurred within 10 days [2] and the transfer is deemed to have been made on March 31. Because the transfer and the tendering of new value would be deemed to have occurred on the same day, there would be no antecedent debt and the exchange would in fact be substantially contemporaneous. The parties have stipulated that if the effective date of the transfer was March 31, the defendants did not receive a preferential transfer.

The trustee asserts, however, that the transfer took effect on March 8, when the deed of trust unconditionally conveyed to the lender a security interest in the property and when the debtors unconditionally promised to pay money to the lender pursuant to a note. If this is true, perfection occurred outside the 10–day period and thus the transfer would not relate back to the earlier date. The

transfer would be deemed "made" on April 11, 34 days after it took effect between the parties. The transfer would therefore be preferential because it was on account of an antecedent debt and was not a contemporaneous exchange.

## ANALYSIS

■ The defendants assert that the disbursement of the loan proceeds was a condition precedent to the debtors' obligations under the note and deed of trust. Until those funds were disbursed to AmSouth, the deed of trust was inoperative as a conveyance and could not "take effect" between the parties.

In support of their argument, the defendants rely upon *In re Pitman,* 843 F.2d 235 (6th Cir.1988). In that case, the buyer in a seller-financed real estate sale executed a sales contract, note and mortgage on July 12, 1984. The seller accepted the sales contract on September 14 and subsequently executed a warranty deed to the buyer, which was recorded along with the deed of trust on October 16 and mailed to the debtor thereafter. The Sixth Circuit held that the buyer's transfer of the mortgage occurred contemporaneously with the transfer of the warranty deed and thus was not a preferential transfer.

The court reasoned that, despite the execution of the mortgage document in July, "[t]he transfer of the mortgage interest was not complete, and it could not 'take effect' until the condition—the passing of clear title—was performed by the seller." *Id.* at 240. A significant factor in the court's holding was § 547(e)(3), which provides that, for purposes of § 547, "a transfer is not made until the debtor has acquired rights in the property transferred"—in other words, "the transferor must acquire the property interest in question before he can be considered to have transferred it." *Id.* at 238. The court rejected the lower courts' conclusion that the transfer of the mortgage interest "took effect" when the contract of sale was accepted by the seller, noting that under applicable

---

**2.** Although April 11 is actually 11 days from March 31, it was the first business day after the 10th day which was a Sunday. The parties *do*

not seem to dispute that April 11 was within the 10–day period. *See* Rule 9006(a).

state law (Kentucky), "a purchaser has no liability to pay or convey a mortgage to a seller ... until the seller conveys title." *Id.* at 239.

The trustee distinguishes *Pitman* on its facts, noting that, in this case, the debtors had title to the property at the time they executed the deed of trust. The trustee relies instead on *In re Petrewsky*, 147 B.R. 27 (Bankr.S.D.Ohio 1992), in which the court held that the debtor's obligation to pay arose when the debtor signed a note and security agreement on an automobile, not a week later when the lender paid the purchase price to the auto dealer. *Id.* at 30. Apparently based upon an examination of the documents, the court emphatically stated that "[t]here is nothing in this record to show that the obligation of the debtor to pay his note was conditioned on that advance [to the dealer]." *Id.* Because the lien was not perfected until 13 days after the unconditional promissory note and security agreement were signed, it did not fall within the 10–day period of § 547(e)(2) and thus was not protected from avoidance by § 547(c)(1). *Id.*

Among the authorities cited in the *Pitman* opinion was the following statement from Osborne, *Mortgages* (1951), § 26:

> In an executory contract by E to lend or perform in some other way and to receive security in return for M's promise to borrow and repay or pay, the property is intended to be security for the obligation to pay or repay and only to the extent of such duty. Until the loan is made or the other stipulated performance is given, no duty to pay or repay arises. Since it was this duty which was intended to be secured, no equitable mortgage will arise until E makes the agreed upon performance. E's performance is a condition precedent either to specific performance of a promise to give a mortgage or to giving effect to an agreement that property be held, or operate presently, as security.

The defendants rely on this language for their argument that the transfer in this case did not come into existence until the date the loan proceeds were disbursed. In context, however, the quoted passage appears to have less to do with *when* an obligation arises than

*whether* it arises at all. The passage is from the chapter on equitable mortgages, which discusses what obligations parties may have to each other in the absence of an enforceable written mortgage.

Here, however, we have a written mortgage, which is dealt with differently in this treatise. In the chapter on mortgages securing future advances, Osborne notes that "[m]aking the advances is a condition precedent to *performance* of the promise [to repay]; it is not necessary to its *existence*." Osborne, *supra*, § 114 at 179 (emphasis added). That section goes on to contrast mortgages for future advances with those involving after-acquired property. While the latter mortgage cannot create a security interest until the debtor actually acquires the property to be transferred, "in a mortgage to secure future advances, ... the property mortgaged is owned at the time and a present legal security interest is transferred by a validly executed and recordable conveyance." *Id.* at 180.

Another recognized treatise applies this future advances rule to facts similar to those in this case, noting that it is common in modern real estate transactions for the mortgage to be executed and recorded prior to the actual disbursement of loan proceeds. In such circumstances, the mortgage comes into existence before the proceeds are disbursed:

> Because the [loan] application and commitment [by the lender] have created an obligation to make the loan before the mortgage is recorded, there is sufficient debt created to make the mortgage valid. The mortgage debt already exists and it is not necessary that the actual advance of the committed funds has occurred.

3A Powell, *Law of Real Property* ¶ 442[3] at 37–67. *See id.* ¶ 441.3 at 37–55 (commitment letter approving loan application creates a binding contract to make a mortgage loan). Under this analysis, the validity of the deed of trust between the debtors and the lender was not conditioned upon disbursement of the loan proceeds, which the lender was already committed to do.

 Support for this conclusion is also found in Tennessee law, which governs this

transaction and is relevant in construing § 547(e)(2)(A). *See Pitman*, 843 F.2d at 239–40. Under Tennessee law, a deed (including a deed of trust) must comply with certain formalities, first to pass title and then to constitute notice to third parties. To be effective between the parties, a deed must be executed and delivered to the grantee. *Brevard v. Neely*, 34 Tenn. 164, 169 (1854); *Estate of Atkinson v. Allied Fence*, 746 S.W.2d 709, 711 (Tenn.Ct.App.1988). "The delivery of a deed which has been knowingly executed with the intention of transferring title completes the transaction so far as the title is concerned and vests title in the grantee." *Mast v. Shepard*, 56 Tenn.App. 473, 408 S.W.2d 411, 413 (1966) (quoting 7 *Thompson on Real Property* (Perm Ed.), Sec. 4110, pp. 555–559). Acknowledgement or proof by witnesses is necessary to recording of the deed, but not to the passing of title between the parties; "the very moment the deed is signed by the maker, and delivered to the [grantee], or to someone for him, whether the same is acknowledged or witnessed or not, the title passes absolutely and unconditionally to the [grantee] without more." *Leadford v. Leadford*, 3 Tenn.Civ.App. 502, 508 (1912). *See* 6A Powell, *supra*, ¶ 898[2] at 81A–76 (deed becomes effective as of the date of delivery).

■ Delivery is a question of the intention of the parties, which may be inferred from the circumstances. *Estate of Atkinson*, 746 S.W.2d at 712. The delivery must be such as to deprive the grantor of power to recall the deed. *Id.; Brevard*, 34 Tenn. at 170. Possession of the deed by the grantee is prima facie evidence of delivery, absent opposing circumstances. *Estate of Atkinson*, 746 S.W.2d at 712.

The proof here dictates the conclusion that the executed deed of trust was "delivered" to the defendants on March 8, 1994. That was the date on which the defendants' agent (the same person who signed the HUD Settlement Statement), as notary, witnessed the signatures of the debtors on the deed of trust. This document states that it was prepared by Freedom Mortgage Corporation, one of the defendants, and, at paragraph 15, that "Borrower shall be given one conformed copy of this Security Instrument." The defendants' agent had possession of the deed of trust on March 8 after the debtors as borrowers signed it, when she notarized their signatures on it. The next two acts, recording it and providing a copy to the borrowers, were the responsibility of the lender, and there is no reason to believe that the lender would not have kept possession of the original. This is *prima facie* evidence of delivery, and no "opposing circumstances" present themselves. Under the *Atkinson* case, delivery of the deed of trust took place on March 8 and, under Tennessee law, that was the effective date of the transfer. The defendants did not perfect their security interest within 10 days of that date and, therefore, there was no substantially contemporaneous exchange.

## ALTERNATE GROUND FOR DECISION

■ An alternate basis for the court's decision is found in the legislative history to § 547, which indicates that the phrase "takes effect between the transferor and the transferee" is intended to be synonymous with the concept of attachment of a security interest under the UCC. *See In re McFarland*, 131 B.R. 627 (E.D.Tenn.1990) (citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 213, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6173), *aff'd mem.* 943 F.2d 52 (6th Cir.1991).

Under Tennessee's version of the UCC, a security interest attaches only after three requirements are met:

(1) the secured party has possession of the collateral or the debtor has signed a security agreement describing the collateral;

(2) value has been given by the secured party; and

(3) debtor has rights in the collateral.

T.C.A. § 47–9–203(1). T.C.A. § 47–1–201(44) defines "value" to include "a binding commitment to extend credit or for the extension of immediately available credit" and "any consideration sufficient to support a simple contract."

Courts construing similar UCC sections in other states have held that "value" may be given prior to the actual disbursement of

loan proceeds if the lender has previously incurred a binding obligation to extend credit. *See, e.g., U.S. v. Cahall Bros.*, 674 F.2d 578 (6th Cir.1982) (Ohio law) ("[t]he actual disbursement of the loan proceeds at a later date would not constitute value ... since [creditor] would merely be tendering money to [debtors] pursuant to a preexisting-existing legal duty); *In re Air Vermont*, 45 B.R. 817 (D.Vt.1984) (Vermont law) (secured party gave value as of date documents were executed); *State Bank & Trust Co. of Beeville v. First National Bank of Beeville*, 635 S.W.2d 807, 33 UCCRS 1775 (Tex.App.1982) ("[t]he promissory note represented a binding loan commitment, a promise on the part of [creditor] to extend credit to the debtor, which constituted 'value' given").

■ Although not yet adopted in Tennessee, the Uniform Land Security Interest Act provides rules similar to UCC Article 9 for land transfers. *See* 3 Powell, *supra*, ¶ 442[1] at 37–63. Under the ULSIA, a mortgage takes effect between the parties upon completion of the same three requirements—a signed writing identifying the property, value given by secured party, and debtor having rights in the collateral. *Id.* In this case, those requirements were met on March 8. The debtor already had rights in the collateral (this was a second mortgage on his house), the defendants made a binding commitment to make the loan, and the debtors signed the deed of trust. Thus, the transfer of the deed of trust "took effect" between the parties on March 8, 1994.

### CONCLUSION

For all of the above reasons, the court finds that the transfer of the deed of trust took effect between the parties 34 days before it was perfected by recording. The transfer was thus on account of an antecedent debt created at the March 8 closing and does not constitute a substantially contemporaneous exchange for new value under § 547(c)(1). Defendants' motion for summary judgment must therefore be denied.

### *ORDER*

For the reasons stated in the Memorandum filed herewith, the defendants' motion for summary judgment is **DENIED**.

The Pretrial Order, entered in this case on November 21, 1994, states that this adversary proceeding will be determined on motion for summary judgment. Therefore, the plaintiff is granted leave to file his motion for summary judgment, the deadline for which is March 10, 1995. The defendants shall file any response within 10 days of their receipt of plaintiff's motion.