DAVID A. NELSON, Circuit Judge.
This bankruptcy appeal presents a question as to the voidability of a residential mortgage that is claimed by the trustee in bankruptcy to constitute a preference under 11 U.S.C. § 547. The mortgage in question secures a loan some of the proceeds of which were used by the debtor to purchase his ex-wife’s marital interest in the residence and the remainder of which were used to repay the balance owed the mortgagee under an earlier mortgage on the property.
To be voidable under § 547(b), the transfer of a debtor’s property interest must, among other things, be on account of an antecedent debt and must increase the transferee’s share of the bankruptcy estate. Here, to the extent that the loan proceeds went to the ex-wife, we conclude that the transfer of the mortgage interest was not made on account of an antecedent debt. For one thing, the transfer was “made,” within the meaning of § 547, on the same day that the debt was incurred— i.e., the day on which the bank disbursed funds to the ex-wife. To the extent that the loan proceeds were used to pay the balance due on the original loan, on the other hand, we believe that the mortgage transfer probably was made on account of an antecedent debt. But the transfer did not improve the bank’s position, as the original loan was itself secured by a mortgage that the bank held on the property. The district court’s order reversing a grant of summary judgment to the bankruptcy trustee will therefore be affirmed.
I
The facts of this case are undisputed. In 1996 Brian Lowe borrowed $21,410 from Inez Deposit Bank for the purchase of a residence. He gave the bank a mortgage as security for the loan. Mr. Lowe later married, and, under Kentucky law, his wife had a one-half interest in the property.
The marriage ended in divorce four years later, and Mr. Lowe agreed to buy back his wife’s one-half interest for $12,500. Mr. Lowe refinanced his mortgage to raise this sum, taking out a new loan from Inez Deposit Bank in the amount of $25,915. He signed a promissory note and executed a new mortgage in favor of the bank on June 30, 2000.
Under federal regulations requiring lenders to make certain disclosures at least three business days before the consummation of a home mortgage transaction, and because of the intervention of a weekend and the Fourth of July holiday, Mr. Lowe was entitled to cancel the transaction any time before midnight on July 5, 2000. See 12 C.F.R. § 226.31(c)(1) (“Regulation Z”). He did not exercise this cancellation right. Accordingly, on July 6, 2000, the bank issued a check for $12,500 to Lowe’s former wife, whereupon she executed a quit *131 claim deed in favor of Lowe. The bank recorded its new mortgage on July 13, 2000, and on July 14 it used the remaining proceeds of the new loan, less certain fees and costs, to pay off the $12,673.52 balance of the original loan.
In August of 2000 Mr. Lowe filed a Chapter 7 bankruptcy petition. Some months later the trustee for the bankruptcy estate commenced the present adversary proceeding against Lowe and Inez Deposit Bank, seeking avoidance of the new mortgage as a preferential transfer. The trustee subsequently moved for summary judgment, and the bankruptcy court granted the motion. The court held that the 2000 mortgage transfer was voidable under 11 U.S.C. § 547(b) because it was made on account of an “antecedent debt”— i.e., a debt that was owed prior to the transfer. Central to this holding was an assumption that the mortgage transfer took effect on June 30, 2000, the date on which Mr. Lowe executed and delivered the mortgage papers to the bank.
After unsuccessfully moving to alter or amend the bankruptcy court’s judgment, the bank appealed to the district court. That court reversed on the basis of an exception to § 547(b) that had not been addressed by the bankruptcy court. The district court held that the new mortgage secured an “enabling,” or purchase-money, loan and was therefore excepted from avoidance under 11 U.S.C. § 547(c)(3). The trustee filed a timely appeal.
II
We must review the decision of the bankruptcy court directly, giving no deference to the district court’s views. See, e.g., In re Cannon, 277 F.3d 838, 849 (6th Cir.2002). We apply the “clearly erroneous” standard to the bankruptcy court’s findings of fact and the “de novo” standard to its conclusions of law. Id.
The elements of a voidable preference are set forth in § 547(b) of the bankruptcy code. In relevant part, that section provides as follows:
“Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property-
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made ... on or within 90 days before the date of the filing of the [bankruptcy] petition; ... and
(5) that enables such creditor to receive more than such creditor would receive if ... the case were a case under chapter 7 of this title; ... the transfer had not been made; and ... such creditor received payment of such debt to the extent provided by the provisions of this title.” 11 U.S.C. § 547(b).
“All five elements are prerequisites to the finding of a voidable preference.” In re Arnett, 731 F.2d 358, 360 (6th Cir.1984).
In the case at bar it is clear that Mr. Lowe’s transfer of the mortgage interest in the year 2000 was for the benefit of a creditor, the bank; that the transfer was made while Lowe was insolvent; and that it was made less than 90 days before Lowe filed for bankruptcy. It is less clear, however, whether the mortgage transfer was “for or on account of an antecedent debt owed by the debtor before such transfer was made.” 11 U.S.C. § 547(b)(2).
To answer that question we must first determine when the mortgage transfer “was made” within the meaning of § 547(b)(2). Under § 547(e)(2), the time *132 at which a transfer is made depends on the number of days separating “the time such transfer takes effect between the transfer- or and the transferee” and “the time such transfer is perfected.” 11 U.S.C. § 547(e)(2). If perfection occurs 10 or fewer days after the transfer takes effect, then the transfer is “made” at the time it takes effect. See id. If, on the other hand, perfection occurs more than 10 days after the transfer takes effect, then the transfer is “made” at the time of perfection. See id.
Ail of this raises the question of when a transfer “takes effect” — a question that the statute does not answer. The bankruptcy court assumed, as we have said, that the mortgage transfer took effect on June 30, 2000, when Mr. Lowe signed the mortgage papers and delivered them to the bank. This, we believe, was error. Under Regulation Z, Lowe had an absolute right to cancel the transaction— and to rescind the mortgage — before midnight of July 5, 2000. Accordingly, the bank did not disburse any of the proceeds of the loan until July 6, 2000. For both of these reasons, it seems to us, the mortgage was unenforceable before July 6 and the mortgage transfer took effect on that date. See In re Pitman, 843 F.2d 235, 240-41 (6th Cir.1988) (holding that a mortgage transfer does not take effect until the mortgagee gives value in exchange for the mortgage).
Having determined when the mortgage transfer took effect, we are now in a position to say when the transfer was “made” under § 547(e)(2). It is undisputed that the mortgage was perfected on July 13, 2000, the date it was recorded. Because perfection occurred only seven days after the transfer took effect, the date the transfer was made is the same as the date of taking effect — July 6, 2000. This conclusion is reinforced by § 547(e)(3), which provides that “a transfer is not made until the debtor has acquired rights in the property transferred.” 11 U.S.C. § 547(e)(3). Until July 6, 2000, Mr. Lowe’s title was subject to his ex-wife’s one-half interest and he could not have granted a new mortgage encumbering a 100% ownership interest. See Pitman, 843 F.2d at 240 (“[I]t was impossible for the debtor to mortgage the property until he got clear title”).
The date on which the mortgage transfer was made, of course, is only half of the equation under § 547(b)(2). We must also determine when the debt that is secured by the mortgage began to be “owed” — i.e., when Mr. Lowe became legally obligated to pay. Only then can we say whether the transfer was made on account of an “antecedent debt.” See 5 Collier on Bankruptcy ¶ 547.03[4] (15th ed. rev.2000) (stating that a debt is antecedent if it is incurred before the transfer in question).
To the extent that the loan proceeds were used to buy out the ex-wife’s interest in the property, we believe that Mr. Lowe’s debt was incurred on July 6, 2000, when the bank disbursed funds to Mrs. Lowe. In Pitman we quoted with approval the “general common law principle[ ]” that “no duty to repay” arises “[u]n-til the loan is made.” Pitman, 843 F.2d at 239-40. Execution of the promissory note on June 30 was thus not enough to trigger Mr. Lowe’s obligation to repay. Consideration of the three-day cancellation period mandated by Regulation Z leads us to the same conclusion. Because it was incurred on the date of the mortgage transfer, the portion of Lowe’s debt used to buy out the interest of the ex-wife is not “antecedent” under § 547(b).[1]
*133 The portion of the 2000 loan used to pay off the 1996 loan, however, may call for a different analysis. As an accounting matter, it was July 14, 2000, when the bank paid itself the balance due on the original loan. As a practical matter, however, it seems to us doubtful that a new obligation was created by the July 14 self-payment. The new loan was simply substituted for the old one. Thus, in any but the most technical of senses, this portion of Mr. Lowe’s debt arose in 1996, when he took out the original loan. That being so, it was probably an “antecedent debt” under § 547(b)(2).
But the fact that the mortgage transfer may have been made, in part, on account of an antecedent debt does not render the transfer voidable. Because the 1996 loan was secured by a mortgage on Mr. Lowe’s residence, the granting of a replacement mortgage did nothing to improve the bank’s position. See In re Biggers, 249 B.R. 873, 877-79 (Bankr.M.D.Tenn.2000). It did not give the bank any greater security interest than it had before, and thus it did not diminish the bankruptcy estate. Absent such diminution, the transfer had no preferential effect. See Pitman, 843 F.2d at 241-42; Biggers, 249 B.R. at 877-79. The fifth prerequisite to voidability, § 547(b)(5), was not satisfied.
At oral argument, counsel for the trustee suggested that consideration of the 1996 mortgage effectively eliminates the statutory requirement of timely perfection. But, as we understand § 547(b), the timeliness of perfection of a transfer is indeed irrelevant if the transferee’s position is not improved. That is, if § 547(b)(5) is not satisfied, it makes no difference whether the transfer was on account of an antecedent debt — the transfer is not voidable. See Arnett, 731 F.2d at 360 (holding that all five elements of § 547(b) must be met).
For these reasons, we conclude that the 2000 mortgage transfer is not voidable under § 547(b). Our rationale makes it unnecessary for us to consider the exceptions to § 547(b) set forth in § 547(c).
AFFIRMED.

. Similarly, the small portion of the 2000 loan proceeds used to pay Mr. Lowe's closing costs is not “antecedent,” because those funds were not disbursed until July 13 or 14, 2000.